UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

In re: FRIEDMAN'S INC., et. al.

　　Debtors.

ALAN COHEN, as Trustee of the Friedman's Creditor Trust

　　Plaintiff,

vs.　　　　　　　　　407CV041

MORGAN SCHIFF & CO., INC., PHILLIP E. COHEN, STERLING BRINKLEY, BRADLEY J. STINN, VICTOR M. SUGLIA, and ALSTON & BIRD LLP,

　　Defendants.

## ORDER

### I. INTRODUCTION

Friedman's Inc., a large jewelry store chain, financially collapsed and entered Chapter 11 Bankruptcy in 2005. *In re Friedman's, Inc.*, Case No. 05-40129 (Bankr.S.D.Ga. filed 1/14/05). The "Friedman's Creditor Trust" arose from that. Its Trustee filed an Adversary Complaint, Case No. 07-04042 (Bankr.S.D.Ga. 1/12/07), since withdrawn to this Court, *In re Friedman's Inc.*, 2007 WL 1541962 (S.D.Ga. 5/23/07) (unpublished), alleging 15 counts of wrongdoing on the part of Friedman's directors, officers, a controlling shareholder, and its attorneys. A-doc. # 1.[1] This Court granted in part and denied in part defense motions to dismiss the Trustee's Complaint.[2] Doc. # 73; *In re Friedman's Inc.*, ___B.R.___, 2008 WL 131163 (S.D.Ga. 1/10/08).[3]

More specifically, the Court dismissed the plaintiff's preferential transfer (Count XIII) and fraudulent conveyance claims (Count XIV) against defendant Alston & Bird (A&B) on *res judicata* grounds. Doc. # 73 at 67-69. The Trustee now moves the Court to reconsider that portion of its Order. Doc. # 75.

Meanwhile, defendant A&B has filed a Motion to Certify Order for Interlocutory Appeal (doc. # 90) regarding the Court's rejection of A&B's *in pari delicto* defense. A&B also moves the Court to stay all proceedings pending appeal. Doc. # 90 at 11.

### II. ANALYSIS

#### A. Trustee's Motion for Reconsideration

The Court previously held that the bankruptcy confirmation plan failed to expressly reserve avoidance actions for preferential transfers or fraudulent conveyances (Counts XIII and XIV). Doc. # 73 at 67-69. The Court explained:

> Where a claim could have been brought before the confirmation of a bankruptcy plan, it is normally precluded in subsequent litigation unless it was *expressly* reserved in the bankruptcy plan. Again, the identification must not only be express, but also the claim must be specific. A blanket reservation that seeks

---

[1] The Court will use "A-doc." to refer to docket filings in the Bankruptcy Court's Adversary No. 07-04042 -- the case withdrawn to this Court. *See* doc. # 27. The Court will simply use "Doc." or "doc." to refer to filings in this Court under case number 407CV041.

[2] All defendants so moved, except Victor Suglia, who has not appeared in this case. He was, however, properly served under F.R.Civ.P. 4(e) and (m). *See* doc. # 74.

[3] Familiarity with the facts recounted in that Order is assumed here.

to reserve all causes of action reserves nothing.

*Id.* at 67 (quotes and cites omitted). The Court then explained that

> nowhere in the reservation statement or in section VI.G of the Disclosure Statement is there any preservation of claims for preferential transfers or avoidance actions against A&B. *See* doc. # 35-2 at 15 (exh. 2 attached to A&B's motion to dismiss).

*Id.* at 67-68. Because the Court found no language in the confirmed bankruptcy plan reserving either preferential transfer or fraudulent conveyance claims against A&B, it deemed these claims barred by *res judicata*. *See id.* at 68; *D&K Life Insurance Company of New York*, 112 F.3d 257, 259-60 (7th Cir. 1997).

As the Trustee points out, however, the Court relied on an incomplete copy of the confirmed bankruptcy plan. Previously the Court reviewed "Trust Claims" defined as "any and all Causes of Action against any ... attorney, law firm" etc. Doc. # 35-2 at 15 (exh. 2 attached to A&B's motion to dismiss). But A&B inadvertently omitted from the record the page defining "Causes of Action." The Trustee has now supplied that page. *See* doc. # 75, exh. A.

"Trust Claims," it turns out, includes "any and all Causes of Action against any ... attorney [or] law firm...." Doc. # 35-2 at 15 (exh. 2 attached to A&B's motion to dismiss). And "Causes of Action" includes "Avoidance Claims." Doc. # 75, exh. A. "Avoidance Claims," in turn, cover both preferential transfers under 11 U.S.C. § 547 and fraudulent conveyances under 11 U.S.C. § 548. Doc. # 35-2 at 8 (exh. 2 attached to A&B's motion to dismiss).

Reading these three separate provisions of the confirmed bankruptcy plan *in pari materia*, the Court agrees with the Trustee that his preferential transfer and fraudulent conveyance claims against A&B were properly reserved. Thus, *res judicata* does not apply to them.

A&B argues alternatively that the Trustee's fraudulent conveyance claim, Count XIV, should still be dismissed because it is duplicative of his legal malpractice claims found in Count XI.[4] Doc. # 87 at 5. A&B contends that the Trustee's fraudulent conveyance claim "rests upon the assertion that Friedman's did not receive the reasonably equivalent value for the fees it paid A&B because of A&B's alleged malpractice." *Id.* (quotes omitted).

11 U.S.C. § 548(a)(1) states:

> The trustee may avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 1 year[5] before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

---

[4] This argument was previously raised in A&B's original motion to dismiss. Doc. # 35. Because of the Court's previous holding, it was not necessary for the Court to reach it. *See* doc. # 73 at 67-68.

[5] The current version of 11 U.S.C. § 548(a)(1) allows avoidance of transfers made within 2 years of the filing of the petition. However, that amendment occurred on 4/20/05 and only applies to cases filed after that date. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L.No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (2005). The instant petition was filed on 1/14/05. Prior to that amendment, § 548(a)(1) only allowed transfers within 1 year of the petition to be voided.

2

>    (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....

*Id.* (footnote added). The Complaint alleges that between 2002 - 2004 Friedman's paid A&B over $5 million for legal services, yet did not receive reasonably equivalent value for that amount.[6] A-doc. # 1 ¶¶ 278, 280. Friedman's also was insolvent by 8/27/02, and for all transfers made after that date. *Id.* ¶ 281.

Presumably the same facts underlie both the legal malpractice and fraudulent conveyance claims, but F.R.Civ.P. 8(d)(2) allows a plaintiff to plead alternative claims. The two claims are not duplicative because they rest on different legal standards. A legal malpractice claim requires proof of (1) the employment of a lawyer; (2) failure of the lawyer to exercise ordinary care, skill and diligence; and (3) damages proximately caused by that failure. *Tante v. Herring*, 264 Ga. 694, 694 (1994). In contrast, a § 548 claim requires the plaintiff to show that he "received less than a reasonably equivalent value" for the value he transferred. "Reasonably equivalent value, for constructive fraudulent transfer avoidance purposes, is not an esoteric concept; rather, the party receives reasonably equivalent value, if it gets roughly the value that it gave." 3B BANKR. SERVICE L. ED. § 34:260 (Feb. 2008) (quotes and cites omitted).

Hence, the standard for finding legal malpractice and finding a debtor "received less than a reasonably equivalent value" is not the same. Theoretically, then, it is possible that the plaintiff could fail to recover under a legal malpractice theory, yet still recover under a § 548 theory. Therefore, the claims are not duplicative.

However, because the same facts underlie each claim, and the damages overlap, at trial the plaintiff would not be allowed to recover on both claims. The Court will thus allow the pleading of alternative theories of recovery, but no double recovery. *See* 27 Fed. Proc., L. Ed. § 62:28, *Inconsistent claims or defenses--No election of remedies* (Apr. 2008).

Meanwhile, the Court grants the Trustee's reconsideration motion and concludes that his avoidance claims in fact were properly reserved in the confirmed bankruptcy plan. Furthermore, his fraudulent conveyance claim is not duplicative of the legal malpractice claims. Count XIII and Count XIV of the Complaint are therefore reinstated against A&B.

**B. Interlocutory Appeal**

A&B moves this Court to certify for interlocutory appeal that portion of its previous Order (doc. # 73) rejecting A&B's *in pari delicto* defense. Doc. # 90. 28 U.S.C. § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he

---

[6] Of course, as stated above, the Trustee could only recover any transfers made within 1 year of the date of the filing of the petition (1/14/05). *See supra* n. 5.

3

shall so state in writing in such order.

*Id.* To qualify an issue for interlocutory appeal three requirements must be met: (1) it must involve a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the termination of the litigation. *Id.*

The Court previously rejected A&B's *in pari delicto* defense to the Trustee's claims against A&B. To reiterate, the *in pari delicto* doctrine basically says that if the company was the wrongdoer, the Trustee cannot pursue others on behalf of the company for victimizing the company, since the company is said to have victimized itself. Here the Trustee had plied what's known as the "adverse interest exception" to the *in pari delicto* defense. That exception applies, and allows the company to recover, when the company's agents have acted entirely adverse to the company.

A&B argued against that exception, and also raised the "sole actor rule" (a sole actor ran the company, so there can be no adverse interest exception) to defeat that exception. Hence, A&B argued, the Court should uphold A&B's *in pari delicto* defense.

This Court determined that the "adverse interest exception" applied, and the "sole actor rule" did not. A&B wants to challenge that ruling on appeal. To grasp what A&B is now saying, it is worth pausing to recapitulate some of the Court's earlier Order here:

> A&B argues that the adverse interest exception is inapplicable to the present situation because Friedman's received a benefit from Cohen's and the directors' wrongdoing. Doc. # 35 at 14. More specifically, the 2002 transaction allowed Friedman's to remove the $109 million Crescent debt from its books and proclaim to Wall Street that it had strengthened its balance sheet with debt reduction of $69 million. A-doc. # 1 ¶¶ 65, 89. And Friedman's, A&B also points out, received $50 million in preferred Crescent stock plus $35 million in subordinated notes in exchange for the $85 million investment. *Id.* ¶ 87. Since Friedman's received benefits from the $85 million investment in Crescent, A&B reasons, the adverse interest exception does not apply.
>
> In response, the Trustee cites *Beck* [*v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998)]. There the Eleventh Circuit held that, even when the director's wrongful actions created short term benefits, where the trustee alleged that but for the company's accountant's negligence the transaction never would have occurred, the adverse interest exception still applies. *Beck*, 144 F.3d at 736. There the misconduct of the directors and the malpractice of the accountants provided the appearance that the company was healthy after the acquisition. *Id.* at 735. The court ruled that, where the trustee had not conceded that the company was better off in the short or long term because of the wrongful actions of the directors and the accountants ... applying the adverse interest exception is proper. *Id.* at 737.
>
> Here the Complaint outlines a similar situation. The Trustee alleges that the interested directors and Cohen were promoting the $85 million investment in Crescent only to further their own interests in Crescent, not the interests of Friedman's. A-doc. # 1 ¶ 36. Furthermore, absent A&B's negligence

4

and malpractice Friedman's would never have approved the investment. *Id.* ¶ 85. Such alleged malpractice includes (a) the failure to disclose information A&B learned, in its position as Friedman's attorney, about Crescent's precarious financial condition; then (b) erroneously telling Friedman's independent directors that Friedman's would retain a secured position as a result of its $85 million investment. *Id.* The truth is that the "benefits" that A&B claims Friedman's received only provided the *appearance* of a healthy investment, and this only hid the true effects of the transaction.

In fact, Friedman's never received anything for its investment. Crescent never paid the dividends Friedman's was owed, and since the investment left Friedman's unsecured, it lost its entire $85 million investment when Crescent declared bankruptcy in 2004. *Id.* ¶¶ 132-133, 202. The Trustee has not conceded that Friedman's received any real benefit from the wrongdoing of its directors. And, because it is alleged that the transaction would never have occurred but for A&B's malpractice, the adverse interest exception applies. Thus, the Trustee's claims are not barred by *in pari delicto*.

Doc. # 73 at 57-60.

A&B now contends that Delaware law should apply in determining the issue of whether *in pari delicto* bars the plaintiff's claims against it. Doc. # 90 at 4, 4 n. 6. It then insists that the Court's application of the adverse interest exception to this case conflicts with "substantial authority" under Delaware law that *would* impute the directors' and officers' wrongdoing to Friedman's (thus barring the plaintiffs' claims against A&B here). Doc. # 90 at 4.

A&B next cites several cases holding that, when a corporation receives short-term benefits from the activity -- even trivial ones such as the appearance of being financially healthy -- the malfeasance is imputed to the corporation. *Id.* at 4-5. It argues that, because Friedman's received some benefits (stock, promissory notes, and improvement of its balance sheet) from the fraudulent acts of its directors and officers, the Court's Order is at odds with other decisions. *Id.* at 6-8. Therefore, A&B seeks to certify the following question: "[W]hether, as a matter of law, a corporation realizes short-term benefit from obtaining stock and promissory notes, and improving its publicly reported balance sheet, where a transaction ultimately proves ill-fated[?]" *Id.* at 8.

Significantly, A&B fails to cite a single case that actually applies Delaware law to this issue. *See In re Greater Southeast Community Hosp. Corp. I*, 353 B.R. 324, 367 n. 67 (Bankr.D.D.C. 2006) (District of Columbia law); *In re Scott Acquisition Corp.*, 364 B.R. 562, 566 (Bankr.D.Del. 2007) (Florida law)[7]; *Nisselson v. Lernout*, 469 F.3d 143, 154 (1st Cir. 2006) (Massachusetts state law, not the law of the state of incorporation); *In re CBI Holding Co., Inc.*, 311 B.R. 350, 370 (S.D.N.Y. 2004) (New York law); *Baena v. KPMG LLP*, 453 F.3d 1, 6 (1st Cir. 2006) (Massachusetts law).

Contrary to A&B's contention that the law of the state of incorporation applies, courts look to the law of the state where the *cause of action* arose when determining imputation issues. *See O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79,

---

[7] This case is the closest A&B comes to Delaware law because the court there stated that Florida law and Delaware law are the same regarding *in pari delicto*.

83-85 (1994); *In re Greater Southeast Community Hosp. Corp. I*, 353 B.R. at 367 n. 67 ("[*I*]*n pari delicto* defense is a type of 'substantive' law subject to the [state's] ... choice of law rules"); *Nisselson*, 469 F.3d at 154; *In re Scott Acquisition Corp.*, 364 B.R. at 566.

While the parties have failed to fully argue the issue, it is apparent that Delaware law does not apply here. For that matter, the only connection that this case has to Delaware is that it is Friedman's state of incorporation. Doc. # 31 at 36 (exh. # 1). However, Friedman's principal place of business is in Savannah, Georgia, which is where the injury to the corporation occurred. Therefore, Georgia law applies to this imputation issue. *Hays v. Paul, Hastings, Janofsky & Walker LLP*, 2006 WL 4448809 at * 4 (N.D.Ga. 9/14/06) (unpublished).

Because Georgia law applies to this issue, the Court technically erred by relying on *Beck* because that case applied Florida law. 144 F.3d at 736. However, Georgia law supports the same result. In Georgia, *in pari delicto* is an equitable doctrine. *Hays*, 2006 WL 4448809 at * 10. Hence, "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Id.* (quoting Black's Law Dictionary 794 (7th ed. 1999)). And "Georgia courts have historically exercised their equitable powers to bar the use of equitable defenses where the result would be harm to innocent third parties, such as creditors." *Id.* (citing *Brooke v. Kennedy*, 172 Ga. 461 (1931)). "This is so because the doctrine of *in pari delicto* is based on the principle that to give the plaintiff relief would contravene public morals and impair the good of society. Hence, it should not be applied in a case in which to withhold relief would, to a greater extent, offend public morals." *Id.* (citing *Gaines v. Wolcott*, 119 Ga.App. 313, 317 (1969), *aff'd*, 225 Ga. 373 (1969)).

This result is bolstered by the United States Supreme Court which stated, "It is not a rigid formula which trammels the free and just exercise of discretion." *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944). Thus, application of the *in pari delicto* doctrine in Georgia is a fact intensive inquiry done on a case by case basis.

Here the entire theory of the Trustee's case is that certain directors and officers of Friedman's were acting *against* the interests of the corporation and solely for their own personal interests and the interests of Crescent. A-doc. # 1 ¶ 36. The $85 million "investment" in Crescent, according to the Trustee, solely benefitted Crescent and the directors individually at Friedman's expense. *Id.*

Georgia law states that "when the officer or agent departs from the scope of his duties and acts in such a way that his private interest outweighs his obligation as a corporate representative, the law will not impute his knowledge to the corporation." *Clarence L. Martin, P.C. v. Chatham County Tax Com'r*, 258 Ga.App. 349, 350-51 (2002); *see also Keenan v. Hill*, 190 Ga.App. 108, 111 (1989) (same). Based on the facts now before the Court, the fraudulent activities of Friedman's directors and officers should not be imputed to Friedman's. This supports the rejection of A&B's *in pari delicto* defense.

Furthermore, equitable considerations counsel against its application as well. Considering the financial condition of Crescent as described in the complaint, the "$35 million in Crescent subordinated notes" and "$50 million in Crescent preferred stock" were

essentially worthless paper. *Id.* ¶¶ 38-87. Friedman's received no real benefit in this exchange. Indeed, when Crescent's first dividend payments came due, it could not pay Friedman's what it was owed. *Id.* ¶¶ 132-133. "[K]nowledge will not be imputed to the corporation on the basis of an assertion that its agents, although motivated by personal interests, did benefit the corporation, where under the facts, there is no actual benefit to the corporation." 18B AM.JUR.2D CORPORATIONS § 1452 (Feb. 2008).

Friedman's basically gave away $85 million and A&B's alleged malpractice was a substantial contributing factor in that result. Applying the *in pari delicto* doctrine to this case would allow for the protection of alleged wrongdoers (A&B) and hurt Friedman's and its creditors, who are alleged to be innocent of any malfeasance. Therefore, the Court finds *in pari delicto* is inapplicable under Georgia law.[8]

Because this is a fact intensive inquiry, the Court also finds that it is not a situation that merits certification for interlocutory appeal under 28 U.S.C. § 1292(b). "Such appeals 'were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts.'" *Simpson v. Carolina Builders Corp.*, 222 Fed.Appx. 924, 925 (11th Cir. 2007) (quoting *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004)). The Eleventh Circuit would have to make an extensive inquiry into the facts of this case to determine whether *in pari delicto* applies. Consequently, A&B's motion to certify this issue is denied.

A&B also takes issue with the Court's "sole actor" analysis. Doc. # 73 at 59-60. A&B had insisted that the adverse interest exception does not apply when "the persons dominating and controlling the corporation orchestrated the fraudulent conduct...." *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 165 (2d Cir. 2003). This is called the "sole actor rule, which negates the adverse interest exception when the principal and agent are one and the same." *Id.* Therefore, the sole actor rule is an exception to the adverse interest exception, which means the *in pari delicto* doctrine winds up being applied and thus prevents recovery by the plaintiff.

This Court concluded that this is not an appropriate case for the sole actor rule to apply. Doc. # 73 at 59-60. It explained that most of the A&B-cited cases invoking that rule involved situations where the sole shareholder controlled and dominated the corporation, and any innocent decision makers were powerless to stop the activity on their own. *Id.* at 59. The sole actor rule simply does not apply when innocent insiders possessed authority to stop the wrongdoing of the other directors or shareholder. *Id.*

Here, the Court noted, Friedman's had created a special committee of independent directors, innocent of any wrongdoing, that was "charged with the power and duty to review any proposal by management regarding the strategic investment in Crescent, and after such review to approve or disapprove such investment in their *sole discretion.*" A-doc. # 1 ¶ 67 (emphasis added). This Special Committee therefore had

---

[8] However, this does not preclude A&B from litigating this defense. Discovery may show that Friedman's directors were acting *on behalf* of Friedman's when it took the actions that it did. That obviously would present a wholly different situation.

7

the authority to decide whether or not Friedman's would make the $85 million investment in Crescent. In other words, it possessed the authority to prevent this transaction and therefore the sole actor rule should not apply, which means that the adverse interest exception to the *in pari delicto* defense could apply. Doc. # 73 at 59-60.

The Court therefore rejected A&B's argument that the sole actor rule should apply. In its appeal-certification motion, A&B still insists that there is a "substantial difference of opinion" on this issue. Doc. # 90 at 11. However, as the Court previously discussed, A&B fails to cite a single case holding that the sole actor rule still applies even if innocent decision-makers could have stopped the fraudulent activity *and* the other directors were acting adversely to the corporation. In fact, A&B makes the blatantly erroneous statement that in *Scott,* a Delaware federal court held "the sole actor rule applies *even if innocent decision-makers were empowered to stop the wrongdoing.*" Doc. # 90 at 8 (emphasis original). That case actually stated that there was only "one member" of the board who was disinterested, while the rest of the board "was dominated by self-interested directors." *Scott,* 364 B.R. at 569. Hence, that one director was *not* empowered to do anything, so the sole actor rule applied. *Id.*

The rest of A&B's cases feature a corporate entity whose innocent members were powerless to do anything, *see Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 165 (2d Cir. 2003) (no directors could have stopped the transaction, only third parties could have potentially stopped the sole shareholder); *In re Bennett Funding Group, Inc.,* 336 F.3d 94, 101 (2d Cir. 2003) (independent directors "impotent to do anything"); *F.D.I.C. v. Ernst & Young,* 967 F.2d 166, 171 n. 2 (5th Cir. 1992) (independent directors could not have done anything), thus further negating A&B's claim that there exists a substantial difference of opinion on this issue.

A&B next cites cases holding that the presence of innocent directors is not an *independent* basis (*i.e.,* the adverse interest exception did not apply) for refusing to apply the *in pari delicto* defense. *See Baena v. KPMG LLP,* 389 F.Supp.2d 112, 119-20 (D.Mass. 2005) (refused to recognize presence of innocent independent directors as *independent* basis for not applying *in pari delicto*); *Official Committee of Unsecured Creditors of Allegheny Health, Educ. & Research Found. v. PriceWaterhouse Coopers, LLP,* 2007 WL 141059 at * 14 (W.D.Pa. 1/17/07) (unpublished) (same).

Those cases, however, are completely inapplicable to the situation at hand. Again, this Court did not find that the presence of the independent directors served as an independent basis for not applying the doctrine of *in pari delicto*. All the Court held was that the sole actor rule did not apply because these independent directors had the *sole discretion* to approve or disapprove of the $85 million transaction.

Even the law review article cited by A&B recognizes that the sole actor rule does not apply if innocent decision-makers could have stopped the fraudulent activity. J.Witmer-Rich and M. Herrmann, *Corporate Complicity Claims: Why There is No Innocent Decision-Maker Exception to Imputing an Officer's Wrongdoing to a Bankrupt Corporation,* 74 TENN.L.REV. 47, at 62-64 (2006). That article only states that the presence of innocent decision-makers does not provide "a stand-alone exception to imputation ... when the requirements of the adverse interest

8

exception are not met." *Id.* at 64. This Court did not recognize any such stand-alone exception, but rather held that the presence of independent board members empowered to stop the fraudulent activity meant the sole actor rule did not apply. Doc. # 73 at 59-60.

A&B thus presents no authority that conflicts with that decision, or even remotely questions it. Plus this is a factual inquiry into the specific circumstances of this case -- a point illuminated by all of A&B's cited decisions. Therefore, this is not an appropriate issue for certification to the Eleventh Circuit. *See Simpson*, 222 Fed.Appx. at 925; *McFarlin*, 381 F.3d at 1259.

Just prior to issuing this opinion, the Court's Deputy Clerk was telephonically informed of A&B's settlement with the Trustee. However, the Court has received no written notice of it, and it remains highly likely that the 1/10/08 Order, which is being amended here, will be relied upon by other parties to the underlying bankruptcy case, *In re Friedman's, Inc.*, No. 05-40129 (Bankr.S.D.Ga. filed 1/14/05), if not this adversary proceeding. Upon receipt of formal settlement notice, the Court will expressly retain jurisdiction to enforce the instant parties' settlement agreement if filed no later than 30 days from the date this Order is served. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994).

### III. CONCLUSION

Accordingly, Trustee Alan Cohen's motion to reconsider the Court's dismissal of Counts XIII and XIV against A&B is ***GRANTED***. Doc. # 75. The Court's dismissal of those Counts (on the previous grounds stated) was erroneous as to A&B, so to that extent the Court ***VACATES*** *In re Friedman's Inc.*, ___ B.R. ___, 2008 WL 131163 (S.D.Ga. 1/10/08), found at doc. # 73, and reinstates Count XIII and Count XIV of the Complaint against A&B. The Court also ***DENIES*** Alston & Bird's motion (doc. # 90) to certify portions of the Court's 1/10/08 Order (doc. # 73) for interlocutory appeal.

This __16__ day of April, 2008.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA